**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF**
**TENNESSEE NASHVILLE DIVISION**

| | | |
|---|---|---|
| LISA ARNOLD, BRANDI TROUT, and SANDRA GOLDEN-WOODS, on behalf of the Churchill Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated, | ) | CASE NO. 3:23-cv-00545 |
| Plaintiffs, | ) | Chief Judge Waverly D. Crenshaw, Jr. |
| v. | ) | Magistrate Judge Barbara D. Holmes |
| MIGUEL PAREDES, PRUDENT FIDUCIARY SERVICES, LLC, LAWSON H. HARDWICK, III, MATTHEW C. CLARKE, and CECIL O. KEMP, JR. | ) | |
| Defendants. | | |

**DEFENDANTS HARDWICK, CLARKE, AND KEMP, JR.'S**
**MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
**AND MOTION TO STRIKE CLASS ALLEGATIONS**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Local Rule 7.01, Defendants Lawson H Hardwick, III, Matthew C. Clarke and Cecil O. Kemp, Jr. (collectively "the Board Defendants"), by and through undersigned counsel, respectfully request an order dismissing Counts III, IV, and V of Plaintiffs' Complaint [ECF No. 1] for lack of standing and for failure to state a claim upon which relief can be granted. In addition, the Board Defendants ask the Court to strike Plaintiffs' class allegations.

## INTRODUCTION

This case concerns the Employee Stock Ownership Plan ("ESOP" or "Plan") that Mr. Hardwick and the company he owned, Churchill Holdings, Inc. ("Churchill"), created for the benefit of Churchill employees. To ensure that the ESOP represented the employees' best interests, Churchill hired Miguel Paredes to act as the ESOP's trustee (the "Trustee")—who himself was

represented by a team of advisors—during the relevant period.

At its core, Plaintiffs allege, implausibly, that _all_ ESOPs are flawed and that _all_ ESOP transaction participants necessarily breach ERISA imposed duties that are owed to ESOP plans and their participants. *See* Compl. ¶ 87. For instance, according to Plaintiffs, _all_ ESOP trustees breach their duty of loyalty because "ESOP trustees have defined and employed deficient 'industry' standards for themselves alone that deviate from sound business practices employed by non-ESOP buyers in the so-called 'real-world' and required by ERISA." *Id.* In other words, Plaintiffs have a grievance with "the industry" itself, and then they try to reverse-engineer claims against the Defendants in this case. *See id.* Plaintiffs' theory does not withstand even slight scrutiny. *See, e.g.*, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 416 (2014) (describing Congressional interest in encouraging ESOPs); *Grindstaff v. Green*, 133 F.3d 416, 422 (6th Cir. 1998) ("Congress has repeatedly expressed its intent to encourage the formation of ESOPs by passing legislation granting such plans favorable treatment, and has warned against judicial . . . action that would thwart that goal.").

Notwithstanding the millions of dollars of value that Mr. Hardwick has created for his workers, and the harm ESOP participants would suffer in ESOP related legal fees if this lawsuit were to proceed, Plaintiffs have chosen to sue Mr. Hardwick, and the other two Churchill board members, Mr. Clarke and Mr. Kemp, along with the Trustee, for alleged violations of ERISA. According to Plaintiffs, the Plan overpaid for Churchill stock in 2020 and the Board Defendants misappropriated dividends. These claims fail for a variety of reasons.

_First_, Plaintiffs fail to plead plausible facts that support their conclusory ERISA claims, and Plaintiffs' own allegations, along with documents properly before the Court on this Motion, undermine the very claims made in the Complaint. For instance, Plaintiffs present no plausible

allegations of fact that show the Plan actually paid more than fair market value for Churchill stock in 2020, and judicially noticeable Form 5500s show that dividends were indeed used to benefit the Plan. Second, two of the named Plaintiffs released their claims against the Defendants, and the Plan itself precludes a class action, so the Court should dismiss the Complaint as to certain Plaintiffs and strike the Plaintiffs' class allegations in their entirety.

Accordingly, for the reasons set forth in detail below, the Board Defendants request that the Court dismiss Plaintiffs' Complaint.

## BACKGROUND

### I. ESOPs Generally

An ESOP is a "bold and innovative method… of bringing about stock ownership by all corporate employees." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 416 (2014) (citing Tax Reform Act of 1976, § 803(h), 90 Stat. 1590). Employees in a company with an ESOP can build wealth by working because the value of their accounts depends on whether the company succeeds.[1] For these reasons, Congress has incentivized the creation of ESOPs and "has written into law 'its interest in encouraging' their use." *Dudenhoeffer*, 573 U.S. at 416; *see also Donovan v. Cunningham*, 716 F.2d 1455, 1466 (5th Cir. 1983) (recognizing that Congress sought to encourage ESOPs).

ESOPs are a type of benefit plan authorized by ERISA whose primary investment is the stock of the plan participants' employer. *Dudenhoeffer*, 573 U.S. at 416. ESOPs typically acquire their employer stock from the company's existing shareholders.[2] In an ESOP transaction, an

[1] *See ESOP Nuts and Bolts*, Nat'l Ctr. Emp. Ownership, http://www.esopinfo.org/how-esops-work/, last visited July 17, 2023 ("*ESOP Nuts and Bolts*").

[2] *See How an Employee Stock Ownership Plan Works*, Nat'l Ctr. Emp. Ownership, https://www.nceo.org/articles/esop-employee-stock-ownership-plan, last visited July 17, 2023 ("*How an ESOP Works*").

independent trustee represents the interests of the ESOP and typically engages an independent valuation advisor to assist with the assessment of the transaction.[3]

Because ESOPs do not have assets of their own when initially created, the ESOP often finances its acquisition of stock with a loan from the company. *See How an ESOP Works*. The company's employees do not invest any of their own money for the ESOP to acquire the company's stock; they are not obligated to provide any money to repay the ESOP loan; and they have no personal liability if there is a default on the loan. *See ESOP Nuts and Bolts*. Frequently, ESOP transactions are leveraged, meaning the company uses debt to fund its loan to the ESOP. *Id*. For the ESOP to pay back the loan, the company typically makes tax-deductible contributions to the ESOP, and the ESOP makes payment back to the company using the contributions. *See Start Here*. While there is a balance outstanding on the loan, the ESOP's stock is held in encumbrance. *Id*. As the ESOP pays down the loan, stock is released from encumbrance and allocated to eligible employees' individual accounts. *Id*.

## II. The Churchill ESOP

Prior to October 31, 2013, Churchill was a privately held company and Mr. Hardwick was Churchill's sole shareholder. Compl. ¶ 5. On or about October 31, 2013, Churchill, at Mr. Hardwick's direction, created the ESOP, which was effective retroactive to January 1, 2013, and Mr. Hardwick sold 490,000 shares of Series A Preferred Stock in Churchill Holdings, Inc. ("Preferred Shares") to the ESOP. *Id.* ¶ 6. These shares represented 49% of all issued Churchill stock at the time. *Id.* The Preferred Shares entitled the Plan (and its participants) to annual dividends of approximately $4.90 per share ($2.4 million annually for the Plan's 490,000 shares). *Id.* ¶ 8.

---

[3] *See Start Here: ESOP Transactions*, Nat'l Ctr. Emp. Ownership, http://www.nceo.org/article/start-here-esop-transactions, last visited July 17, 2023 ("*Start Here*").

On December 24, 2020, Mr. Hardwick sold his remaining equity in Churchill—510,000 shares of common stock—to the Plan (the "2020 Transaction"). *Id.* ¶ 10. That transaction was financed through a note payable to Mr. Hardwick, which Churchill subsequently assumed from the Plan. *Id.* To ensure the 2020 Transaction was fair to ESOP participants, the Board Defendants selected a nationally recognized independent ESOP Trustee to represent the interests of the Plan and its participants. *Id.* ¶ 13, 28. The Trustee, who was advised by his own set of independent valuation and legal advisors, had sole and exclusive authority to negotiate the terms of the 2020 Transaction and to authorize the Transaction on the Plan's behalf. *Id.*

Plaintiffs allege that they are former Churchill employees and participants in the ESOP. *Id.* ¶¶ 2, 23-25. Plaintiffs further allege that the ESOP paid more than adequate consideration in connection with the 2020 Transaction. *Id.* ¶ 88. As a result of this alleged overpayment, Plaintiffs claim that the Trustee breached its fiduciary duty and engaged in a transaction prohibited by ERISA. *Id.* ¶¶ 93-111. Plaintiffs then seek to hold the Board Defendants derivatively liable for the Trustee's alleged ERISA violation. *Id.* ¶¶ 136-138. They also seek to hold Mr. Hardwick personally liable because he allegedly "knowingly participated" in that alleged violation as a counterparty to that transaction. *See id.* ¶ 129.

Furthermore, Plaintiffs allege that the Board Defendants misused dividends that should have inured only to the benefit of the Plan. *Id.* ¶¶ 116-117. Plaintiffs, however, fail to state plausible claims against any of the Board Defendants.

## LEGAL STANDARD

Courts must take "particular care" in evaluating ERISA claims at the pleading stage. *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013). That is because "the prospect of discovery" in

an ERISA class action is "ominous" and "elevates the possibility that a 'plaintiff with a largely groundless claim [will] simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value.'" *Id*. at 719 (alteration in original). Courts therefore must engage in "careful, context-sensitive scrutiny of a complaint's allegations" in ERISA cases. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). Recognizing the "difficult tradeoffs" ERISA fiduciaries face, the Supreme Court has instructed that, at the motion to dismiss stage, "courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Northwestern Univ*., 142 S. Ct. 737, 742 (2022).

The Board Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6). Under 12(b)(6), "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

Accordingly, a plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Furthermore,

"courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest*., 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Furthermore, in evaluating whether a complaint sufficiently alleges standing under Rule 12(b)(1), the same "'plausibility' requirement… used to evaluate facial challenges to claims under Rule 12(b)(6)" applies. *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015); *see also Child.'s Health v. United States FDA*, 2022 U.S. App. LEXIS 19234, *12 (6th Cir. July 12, 2022) (affirming dismissal where plaintiff's allegations of injury were not concrete or particularized).

The Board Defendants also seek partial dismissal under Rule 12(b)(1). A court does not have subject matter jurisdiction under Rule 12(b)(1) if a plaintiff lacks Article III standing. *Dubois v. U.S. Dep't of Agric*., 102 F.3d 1273, 1281 (1st Cir. 1996). Plaintiffs have the burden to establish that they have Article III standing: i.e., that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of [Defendants], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

## ARGUMENT

Plaintiffs' Complaint purports to state five causes of action: Count I against an ESOP Trustee, Paredes and his company, Prudent Fiduciary Services, LLC ("PFS"), for allegedly violating ERISA § 406(a); Count II against Paredes and PFS for alleged breaches of fiduciary duty under ERISA § 404(a) regarding the 2020 Transaction that sold a controlling interests in Churchill; Count III against the Board Defendants for allegedly breaching fiduciary duties under ERISA § 404(a) regarding dividends paid to the ESOP between 2013 to 2019 (the "Dividend Payments"); Count IV against Hardwick only for "Knowing Participation in ERISA Violations Pursuant to 29 U.S.C. § 1132(a)(3)" regarding the 2020 Transaction; and Count V against the Board Defendants

for alleged "Co-Fiduciary Liability Under ERISA § 405(a)" regarding the 2020 Transaction. Accordingly, the Board Defendants' Motion seeks dismissal of Counts III-V.

## I. PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION IN COUNTS IV OR V AGAINST MR. HARDWICK AND THE OTHER BOARD DEFENDANTS REGARDING THE 2020 TRANSACTION

### A. Because Plaintiffs fail to state a claim against the Trustee concerning the 2020 Transaction, Plaintiffs necessarily fail to state a claim against the Board Defendants.[4]

Plaintiffs' claims against the Board Defendants concerning the 2020 Transaction incorporate the allegations against Paredes and PFS. *See, e.g.*, Compl. ¶¶ 120, 132. Indeed, the claims against Mr. Hardwick and the other Board Defendants concerning the 2020 Transaction rely entirely on the sufficiency of the claims against the Trustee in Counts I and II, which conclude that the Trustee violated ERISA 404 and 406(a). Plaintiffs, however, fail to plead facts that demonstrate the Trustee failed to perform its duties or that the Trustee employed a deficient process. Plaintiffs therefore necessarily fail to state a claim in Counts IV or V. *Perrone v. Johnson & Johnson*, No. 19-00923 (FLW), 2020 WL 2060324, at *19 n.12 (D.N.J. Apr. 29, 2020) (finding plaintiffs' co-fiduciary liability claim fails because it is "derivative of their direct breach of fiduciary duty claim," and as "Plaintiffs have not adequately alleged a breach of fiduciary duty by the [Defendants,] Plaintiffs' claim for cofiduciary liability must be dismissed, as well").

To state a claim, Plaintiffs must do more than allege that the Plan paid too much for Churchill stock. As a matter of law, "adequate consideration" for closely-held corporations is "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan." *Henry v. Champlain Enters.*, Inc., 445 F.3d 610, 618 (2d Cir. 2006)

---

[4] The Board Defendants are mindful of the Court's Judicial Preferences concerning the incorporation of legal authority and factual argument from another party in the case. Accordingly, the Board Defendants, in this subsection, endeavor to paraphrase and thereby adopt the Trustee's substantive arguments on the points addressed in this subsection.

(citing 29 U.S.C. § 1002(18)). Accordingly, claims under section 404, which challenge a trustee's prudence, and prohibited transaction claims under sections 406(a) and 408(e) are process-based; such claims necessarily attack the trustee's process in arriving at its decision. *See, e.g.*, *Chao v. Hall Holding Co.*, 285 F.3d 415, 437 (6th Cir. 2002) ("[D]etermining 'adequate consideration' . . . requires . . . an examination of the process that led to the determination of fair market value in light of § 404's fiduciary duties."); *Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1061 (M.D. Tenn. 2018) (holding that a claim for breach of fiduciary duty under section 404 is focused on "whether the fiduciary engaged in a reasonable decision-making process"); *see also Henry*, 445 F.3d at 619 ("[T]he adequate consideration test focuses on the conduct of the fiduciaries in determining the price, not the price itself.").

Thus, to state a claim, Plaintiffs must *plausibly* allege that the Trustee's process was flawed. Plaintiffs must allege more than the simple fact of a section 406 prohibited transaction. *See Leber v. Citigroup, Inc.*, No. 07 Civ. 9329 (SHS), 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010) (holding that, if a "complaint does not allege any basis for presuming that a defendant's conduct fell outside a statutory exemption[,] . . . it is deficient.").

Here, however, Plaintiffs' claims against the Trustee fail because the Complaint fails to allege facts sufficient to raise an inference that the Trustee's process was deficient. For example, Plaintiffs allege that projections for Churchill's performance were "overly optimistic" and that "comparable companies to Churchill" were "too dissimilar." *See* Compl. ¶¶ 83-85. Plaintiffs, however, do not allege why the projections were unreasonably optimistic or why the comparable companies were not comparable. Moreover, Plaintiffs do not allege that the Trustee or its advisors relied on the purportedly "optimistic" projections. Further, no facts support Plaintiffs' naked conclusion that the projections were indeed "overly optimistic" or that the comparable companies

were too "dissimilar." Essentially, Plaintiffs merely plead generic, hypothetical scenarios that could occur in any valuation process; they do not allege facts concerning the Trustee's actual process, let alone facts that demonstrate the types of errors that could occur in an ESOP valuation process actually occurred in the 2020 Transaction.

Plaintiffs *imply* in their allegations that the price the ESOP paid in the 2020 Transaction was more than fair market value because the share price was considerably higher in 2020 than it was in 2019. As a matter of law, however, courts reject this misguided implication. *See, e.g.*, *Gamino v. KPC Healthcare Holdings, Inc.*, No. 5:20-cv-01126, 2022 WL 4596576, at *8 (C.D. Cal. Aug. 15, 2022). Without additional facts, the mere increase in share price over time does not demonstrate that the Plan paid more than fair market value.

Similarly, Plaintiffs conclude that the Trustee caused the ESOP to pay a control premium in the 2020 Transaction, but that the ESOP did not actually obtain control of the company. To support this conclusion, Plaintiffs allege that Churchill's pre-transaction management continued in their positions after the 2020 Transaction. As a matter of law, however, there is nothing improper about management remaining in place post-transaction. *See* Proposed Regulation Relating to the Definition of Adequate Consideration, 53 FR 17632-01 17636, 1988 WL 269847 (May 17, 1988) ("Proposed Regulation"). Even though the Proposed Regulation was never finalized, it still is instructive; indeed, courts look to the Proposed Regulation for guidance. *See Unaka Co. v. Newman*, No. 2:99-CV-267, 2005 WL 1118065, at *27 (E.D. Tenn. Apr. 26, 2005) ("The standard for determining fair market value is set forth in DOL's "Proposed Regulation Relating to the Definition of Adequate Consideration."). The Proposed Regulation permits an ESOP to pay a control premium even when directors and officers maintain their positions post-transaction. Consequently, to state a claim, a plaintiff must plead more than a control premium when officers

and directors maintain their position to raise an inference of an imprudent process.[5]

Plaintiffs also allege that the Plan did not really obtain control of Churchill because the company paid a special dividend that "stripp[ed] the company of cash needed for operations and massively increas[ed] the value of Hardwick's warrants." Compl. ¶ 80. Plaintiffs conclude that this payment shows that Mr. Hardwick continued to control Churchill at the expense of the ESOP. This theory is misguided. Indeed, it is not a zero-sum game. When the Seller Note liability is reduced by the special dividend, the equity value necessarily increases. It is not plausible that paying off debt, by itself, hurt the Plan.

Plaintiffs' last attempt to conclude that the Trustee used an imprudent process concerns warrants that Churchill issued to Mr. Hardwick. *See* Compl. ¶ 86. According to Plaintiffs, the Trustee "did not account for the dilutive effect of that compensation." *Id.* Contrary to Plaintiffs' allegations, the 2020 Transaction did not involve an issuance of warrants, but even if it did, the allegations that warrants were issued, without more, does not suggest that the Trustee used an imprudent process. Warrants benefit ESOP-owned companies by increasing cash flow. Without allegations of fact, Plaintiffs' mere conclusion that the issuance of warrants necessarily reduced the fair market value of Churchill stock at the time of the 2020 Transaction is not plausible. Again, it is not a zero-sum game.

Rather than plead plausible facts concerning the Trustee's actual process, Plaintiffs merely conclude that the price in the 2020 Transaction was too high because Plaintiffs think all ESOPs

[5] Also, the ESOP's governing documents show that Paredes, as independent Trustee, had full discretion to vote the ESOP's shares in all corporate matters requiring a vote of the shareholders, including the election of Board members. *See* Exhibit 1 to Motion to Dismiss §§ 8.08(a), 9.03. Thus, the Plan documents contradict and render implausible Plaintiffs' allegations that the ESOP failed to obtain control of the Company. Furthermore, ERISA itself requires a plan trustee to vote in the interest of the plan, even if directed by a company-side individual to do otherwise. *See* 29 U.S.C. 1103(a)(1); 29 U.S.C. 1104(a)(1)(D). Thus, Plaintiffs' allegation that the Plan did not really have control of the Company after the 2020 Transaction is an erroneous legal conclusion.

must somehow hurt their participants. Plaintiffs must do more to state a claim. *See Sweda v. Univ. of Pa.*, 923 F.3d 320, 337 (3d Cir. 2019), cert. denied, 140 S. Ct. 2565 (2020); *see also Ahrendsen v. Prudent Fiduciary Servs.*, LLC, No. 21-cv-2157, 2022 WL 294394, at *4 (E.D. Pa. Feb. 1, 2022) (finding plaintiffs have an "obligation to negate" the adequate consideration exemption).

Also, Plaintiffs' duty of loyalty claim against the Trustee is not pleaded sufficiently because it is a mere re-casting of Plaintiffs' processed-based claims and because Plaintiffs failed to allege any facts suggesting Paredes acted for the purpose of benefiting anyone other than the Plan. Accordingly, with respect to the 2020 Transaction, because Plaintiffs fail to state a cause of action against Paredes and PFS, they necessarily fail to state a cause of action against the Board Defendants.

**B. Plaintiffs also fail to state a claim against the Board Defendants for breach of fiduciary duty because Plaintiffs fail to plausibly allege that the Board Defendants breached their limited duty to monitor.**

Plaintiffs' theory against the Board Defendants is that they failed to monitor the Trustee's actions in connection with the 2020 Transaction. *See* Compl. ¶ 137.[6] When "members of an employer's board of directors have responsibility for the appointment and removal of ERISA trustees, those directors are themselves subject to ERISA fiduciary duties, albeit ***only with respect to trustee selection and retention***." *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009) (emphasis added). This limited duty involving selection and retention is often described as a "duty to monitor."

Here, Plaintiffs set out no plausibly alleged facts to suggest that the Board Defendants violated a monitoring duty. Plaintiffs set out no facts to suggest that selecting the Trustee was

[6] To the extent Plaintiffs purport to assert a breach of some other fiduciary duty, beyond the limited duty to monitor, such a claim would fail because the Plaintiffs cannot plausibly allege that the Board Defendants had any other fiduciary duty or were acting in any other fiduciary capacity with respect to the 2020 Transaction.

inappropriate or ill-conceived. And Plaintiffs set out no facts to plausibly assert that the Board Defendants should have removed the Trustee for incompetence. To the contrary, Plaintiffs concede that the Trustee himself selected a team of "approximately fifteen full-time" advisors "including an in-house business appraiser" to assist him in connection with the 2020 Transaction. *See* Compl. ¶ 28. Accordingly, Plaintiffs do not plausibly allege the Board Defendants knew the Trustee was deficient in any way, let alone that they did not satisfy their limited duty to monitor the Trustee.

Plaintiffs' pleading failures in this regard warrant dismissal. *Cf. In re McKesson HBOC, Inc. ERISA Litig*., 2002 U.S. Dist. LEXIS 19473, *52 (N.D. Cal. Sept. 30, 2002) (dismissing duty to monitor claim); *In re Lehman Bros. Sec. & ERISA Litig.*, 113 F. Supp. 3d 745, 765 (S.D.N.Y. 2015) (granting motion to dismiss duty to monitor claims); *In re Dynegy, Inc., ERISA Litig*., 309 F. Supp. 2d 861 (S.D. Tex. 2004) (granting a board of directors' motion to dismiss an ERISA "failure to monitor" claim after concluding that plaintiff failed to allege that any of the directors were on notice of possible misadventure by any of their appointees).

### C. Plaintiffs fail to state a claim in Count IV, against Mr. Hardwick for "Knowing Participation" for the additional reason that Plaintiffs fail to plausibly allege that Mr. Hardwick knowingly participated in a prohibited transaction.

In Count IV, Plaintiffs allege that Mr. Hardwick knowingly participated in breaches of fiduciary duty under ERISA § 502(a)(3). To state that claim, Plaintiffs must plead (1) a qualifying ERISA violation and (2) the defendant's knowing participation in that violation. *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc*., 530 U.S. 238, 248 (U.S. 2000).[7]

Here, Plaintiffs do not allege any facts at all that demonstrate Mr. Hardwick believed he was engaged in an unlawful prohibited transaction. Further, Plaintiffs fail to plausibly allege that

[7] For the reasons stated above, as well as the reasons stated in the Trustee's motion to dismiss for failure to state a claim, Plaintiffs have failed to plead a qualifying ERISA violation and the claims against the Board Defendants therefore likewise fail to state a claim.

Mr. Hardwick knew that the Trustee was breaching any alleged fiduciary duty. Plaintiffs allege that "Hardwick knew or should have known (1) about the existence of the Plan, (2) about the Plan's purchase of his Churchill stock in the 2020 Transaction, (3) that the Trustee was the fiduciary trustee to the Plan, (4) that he was a Churchill officer, director and 10% or more shareholder, or otherwise a party in interest, (5) that he lent money to the Plan in the 2020 Transaction, and (6) that the Trustee caused the Plan to engage in the stock and loan transactions." Compl. ¶ 125. None of those facts, however, suggest that Mr. Hardwick believed that he was engaged in an unlawful transaction. Plaintiffs then allege that because Mr. Hardwick was an officer and director of Churchill and negotiated the Transaction on his own behalf, he "was aware of sufficient facts that the 2020 Transaction constituted a prohibited transaction." *Id.* ¶ 126. This conclusory allegation simply assumes its premise and it cannot state a claim for knowing participation. Indeed, mere knowledge about a transaction does not meet the "knowing" requirement under § 1132(a)(3). *See Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc*., No. 17-CV-07243-BLF, 2019 WL 6841222, at *6 (N.D. Cal. Dec. 16, 2019) (granting motion to dismiss where plaintiff failed to allege facts to establish knowledge or constructive knowledge that a transaction was unlawful and merely "equate knowledge of a 'prohibited transaction' with knowledge of unlawful conduct").

Plaintiffs therefore allege that "Churchill management working under Hardwick provided company information to the buyer side." Compl. ¶ 128. Plaintiffs further allege that Mr. Hardwick "knew or should have known facts regarding the scope of the Trustee's due diligence, the overly optimistic projections and other information provided to the Trustee and its advisors by Churchill management, and company valuations." *Id.* Plaintiffs, however, do not allege that Churchill management provided inaccurate or incomplete information to the Trustee. *See id.* Put simply,

Plaintiffs do not allege any facts that show Mr. Hardwick knew the Trustee engaged in a prohibited transaction.

To the contrary, as Plaintiffs allege, the Trustee, in fulfilling his duties, used "a team of approximately fifteen full-time individuals to execute ESOP transactions including an in-house business appraiser [and] a routine due diligence process." Compl. ¶ 28. The only plausible inference from this allegation is that Mr. Hardwick had every reason to believe the Trustee's process was sound and lawful. The Court therefore should dismiss Count IV for that independent reason.

**D. Count IV fails to state a claim against Mr. Hardwick for the additional reason that the Plaintiffs clearly seek legal, rather than equitable relief, regardless of how they try to characterize it.**

In addition, it is well-established that ERISA § 502(a)(3) claims must seek legal, and not equitable, relief. Because Plaintiffs seek legal relief, the claim should fail.

The Supreme Court has held repeatedly that "the phrase 'appropriate equitable relief' in § 502(a)(3) 'is limited to those categories of relief that were *typically* available in equity[.]" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 660 (9th Cir.), *cert. denied*, 140 S. Ct. 223 (2019) (quoting *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Ben. Plan*, 577 U.S. 136, 142 (2016)). To adequately plead a claim under § 502(a)(3), plaintiffs must allege that the relief they seek "is equitable rather than legal." *Buckley Dement, Inc. v. Travelers Plan Administrators of Illinois, Inc.*, 39 F.3d 784, 787 (7th Cir. 1994); *see also Zavala v. Kruse-Western, Inc.*, 398 F. Supp. 3d 731, 740 (E.D. Cal. 2019). "The label a plaintiff attaches to a particular form of relief is not dispositive; rather, whether a remedy is legal or equitable 'depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought.'" *Zavala*, 398 F. Supp. 3d at 741 (quoting *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363 (2006)).

Here, Plaintiffs claim to be entitled to disgorgement of ill-gotten gains and/or a constructive trust on any funds wrongfully withheld by Mr. Hardwick. Compl. ¶ 131. However, to be so entitled, Plaintiffs must identify specific "money or property identified as belonging in good conscience" to the ESOP that can "clearly be traced to particular funds or property in [the Board Defendants'] possession." *Depot*, 915 F.3d at 661 (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)) (internal quotation marks omitted); *see also Zavala*, 398 F. Supp. 3d at 741 (dismissing 502(a)(3) claims against non-fiduciary because plaintiff failed to allege ESOP property was "directed to any particular account over which plaintiff might have a valid claim"). Here, Plaintiffs identify no specific property or traceable funds.

In reality, the Complaint shows that Plaintiffs actually seek legal relief. *See Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc*., No. 17-CV-07243-BLF, 2019 WL 6841222, at *8 (N.D. Cal. Dec. 16, 2019) (granting motion to dismiss where plaintiffs failed to allege facts that indicate the funds they sought were traceable and failed to identify a specific fund to which they were entitled). Here, Plaintiffs' claim is that the Trustee (not the Board Defendants) caused the ESOP to pay "in excess of fair market value" for the stock it acquired. They seek to recover the ESOP's ***monetary losses***—the amount of the alleged overpayment—from the Trustee. Plaintiffs also seek to recover those same monetary losses—the amount of the alleged overpayment—from the Board Defendants based on the conclusory, self-serving and legally erroneous conclusion that the Board Defendants are "fiduciaries" of the Plan because they had the power to appoint and remove the Trustee. *See* Compl. ¶ 35.

By seeking the ESOP's losses, Plaintiffs do not seek "specifically identifiable funds" from Mr. Hardwick. Rather, they seek recovery from Mr. Hardwick's "assets generally." *Depot*, 915 F.3d at 661 (quoting *Sereboff*, 547 U.S. at 363) (internal quotation marks omitted). This is a classic

form of ***legal,*** not equitable, relief, because "a judgment in plaintiffs' favor would have no connection to any particular fund whatsoever. [Mr. Hardwick] would simply be required to pay a certain amount of money, and [he] could satisfy that obligation by dipping into any pot [they] like." *Id.* at 662; *see also Buckley*, 39 F.3d at 787 (dismissing § 502(a)(3) claim because requested relief was legal, and not equitable, because plaintiff sought "monetary reimbursement" to "make [plaintiff] whole"). Accordingly, Plaintiffs have failed to adequately plead a non-fiduciary claim under § 502(a)(3), and this Court should therefore dismiss Plaintiffs' claim against Mr. Hardwick.

## II. PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION AGAINST THE BOARD DEFENDANTS IN COUNT III REGARDING DIVIDEND PAYMENTS

Plaintiffs allege that from October 31, 2013 to December 31, 2019, the Board Defendants breached their fiduciary duties to the ESOP because they misappropriated $2.4 million in annual Dividend Payments to be used to satisfy company obligations rather than being used to pay down debt or for other purposes that benefit the Plan and its participants. Plaintiffs allege as follows:

> In each year, $2.4 million in dividends was deposited into the Plan, but in most years a significant portion of the dividends were used to offset corporate obligations, like ESOP contributions, instead of being used for the benefit of the Plan and its participants, ***like paying interest and principal on the 2013 Note*** … .

Compl. ¶ 9 (emphasis added).[8] This claim can be disposed of easily.

As an initial matter, Plaintiff cannot assert a breach of fiduciary duty claim for any action that predates 2017. ERISA's statute of limitations prescribes as follows:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
>
> > (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of

[8] Plaintiffs do not define "2013 Note" in the Complaint. Ostensibly, it means the ESOP note entered into by the ESOP to buy the shares in the 2013 Transaction. *See* Compl. ¶ 7.

the breach or violation;

> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

ERISA § 413(1), 29 U.S.C. § 1113(1).

Here, Plaintiffs allege that "the Board Defendants are liable for misappropriating dividends due on the Preferred Stock between 2013 and 2019, which dividends where [sic] owed to participants with allocated shares …" Compl. ¶ 92. Plaintiffs, however, filed their Complaint on May 26, 2023. Accordingly, any claim they assert concerning Dividend Payments prior to May 26, 2017 is barred by the statute of limitations.

In any event, Plaintiffs' Dividend Payment claim fails for other reasons. *Indeed, judicially noticeable documents confirm that the $2.4 million annual Dividend Payments were used for the very purposes that Plaintiffs claim they should have been used*. The audited financial statements that are attached to the ESOP's annual Forms 5500 from as far back as 2015 contain a specific paragraph that shows that each annual payment of $2.4 million was used to service existing debt obligations (*i.e.*, the 2013 Note). *See, e.g.*, Composite Exhibit 2 to Motion to Dismiss at page 51 of PDF, Note 7 ("The Company paid a dividend to the ESOP of $4.90 per share or $2,400,000 during the year ended December 31, 2019. This dividend and $7,397,808 of the employer contribution were applied to debt service.").[9] Due diligence would have revealed that there was no misappropriation of Dividend Payments.

Plaintiffs make a feeble attempt to suggest that paying off the 2013 Note early somehow constituted a breach of fiduciary duty by the Board Defendants. Not so. Prepayment of the 2013 Note is expressly contemplated and permitted under the Plan's terms and cannot therefore

---

[9] The Court may consider the Forms 5500 without converting the Motion to Dismiss into a motion for summary judgment. *See Clark v. Jackson*, No. 22-5553, 2023 WL 2787325, at *2 (6th Cir. Apr. 5, 2023).

constitute a breach of fiduciary duty. *See, e.g.*, Exhibit 1 to Motion to Dismiss § 3.06. Also, paying off the debt quite obviously inures to the benefit of the Plan because reducing the debt releases shares to the Plan. *See id.*; *see also How an ESOP Works*, *supra* note 2. And even if there were some fiduciary breach (and there is not), Plaintiffs have not, and cannot, allege that they suffered any individualized injury to their respective accounts by virtue of dividends being used to pay the Plan's debt. *Cf. Loren v. Blue Cross & Blue Shield*, 505 F. 3d 598, 608-09 (6th Cir. 2007) (affirming dismissal where plaintiffs' alleged injury was too speculative). The Court should dismiss Count III.

## III. THE COURT SHOULD DISMISS CLAIMS ASSERTED BY PLAINTIFFS LISA ARNOLD AND SANDRA GOLDEN-WOODS BECAUSE THEY RELEASED THEIR CLAIMS AGAINST THE BOARD DEFENDANTS.

Plaintiffs Lisa Arnold ("Arnold") and Sandra Golden-Woods ("Golden-Woods") signed releases with Churchill Mortgage Corporation in which they released the claims that they now purport to assert against the Board Defendants. *See* Composite Exhibit 3 to Motion to Dismiss.[10] Specifically, each of them signed a release that states in relevant part the following:

> In Exchange for Employer's agreement to pay the amounts provided in Section 2, ***Employee hereby irrevocably and unconditionally releases, acquits and forever discharges*** Employer and ***each of Employer's*** owners, stockholders, partners, members, predecessors, successors, assigns, agents, ***directors***, officers, employees, representatives and attorneys, divisions, subsidiaries, affiliates, … and all persons acting by, through, under or in concert with any of them (collectively "Releasees"), or any of them, ***from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suites, rights, demands, costs, losses, debts and expenses*** (including attorney's fees and costs actually incurred), or any nature whatsoever pertaining to [her] employment with or separation from Employer, or arising from any action

[10] Because the release implicates the Court's subject matter jurisdiction, the Court is not bound by the four corners of the Plaintiffs' Complaint with respect to this issue. *See Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003). Furthermore, Plaintiffs incorporated the separation agreements into their Complaint by reference to Plaintiffs' employment status. *See, e.g.*, ¶ 23, 25. Because it is incorporated by reference and "central to the plaintiff's claim," the releases are considered as part of the pleadings for the purposes of a motion to dismiss under Rule 12(b)(6). *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791–92 (M.D. Tenn. 2018).

> taken by Employer, known or unknown (hereinafter referred to as "Claim" or "Claims"), ***which Employee now has, owns or holds, or claims to have, own or hold, or which Employee at any time hereafter may have, own or hold, or claim to have, own or hold, against each of any of the Releasees***, except for Employer's duties and obligations pursuant to this Agreement.

*See id.* § 3 of each agreement (emphasis added). The Release further provides that "Employee acknowledges and agrees that she is releasing and giving up any right or claims she may have under … the Employee Retirement Income Security Act of 1974." *Id.* Accordingly, the Releases signed by Arnold and Golden-Woods preclude them from asserting their claims against the Board Defendants. *See Dotson v. Arkema, Inc.*, 397 F. App'x 191, 192 (6th Cir. 2010) (holding that a separation agreement properly released ERISA claims); *see also Stanley v. George Washington Univ*., 394 F. Supp. 3d 97, 105 (D.D.C. 2019), aff'd, 801 F. App'x 792 (D.C. Cir. 2020) (granting motion to dismiss ERISA claim because prior release executed by plaintiff deprived plaintiff of standing). Arnold and Golden-Woods therefore lack standing to assert their claims and the Court should dismiss their claims against the Board Defendants with prejudice.

## IV. THE PLAN INCLUDES A WAIVER OF CLASS AND THE COURT THEREFORE SHOULD STRIKE THE CLASS ALLEGATIONS IN THE COMPLAINT.

Section 11.09 of the Plan provides in part as follows:

> <u>Consent to Jurisdiction; Service of Process; Legal Action; and Waiver of Class</u>. For all litigation disputes or controversies which may arise out of or in connection with this Plan its construction, interpretation, effect, performance or nonperformance, or the consequences thereof, each party hereto hereby waives the right to trial by jury and hereby consents to the jurisdiction of the courts of the State of Tennessee in Brentwood, Tennessee or the United States District Court, Middle District of Tennessee. A Participant (which includes for purposes of this Section any other claimant relating to the Participant) may not bring any claims, demands, disputes, lawsuits or proceedings ("Actions") against the Plan, the Plan Administrator, the Plan Sponsor, any Participating Employer or the Trustee until the Participant has followed the applicable claims procedures and exhausted the Participant's administrative remedies available under the Plan. No Actions may be brought more than one year following a final decision on the Participant's claim under the Plan's governing claims procedures (which claim shall include any substantially similar claim thereafter filed) or, if earlier two (2) years (measured by

> 365 day periods) from the date when the Participant knew of the underlying facts related to his claim. The applicable statute of limitations on suits shall apply in any forum where a Participant initiates such suit or Action. If an Action is not filed within this period, the Participant's claim will be deemed permanently waived and abandoned, and the Participant will be precluded from reasserting it***. To the fullest extent permitted by applicable law, Actions shall not be brought as class or collective actions. A participant, beneficiary, or other claimant expressly waives, forfeits, and forever relinquishes the right to participate in a class or collective action and to any recovery as part of a class or collective action. With respect to Actions that, pursuant to applicable law, must be brought in a representative capacity of another, which include without limitation Actions brought for losses to the Plan pursuant to ERISA Section 502(a)(2) and ERISA Section 409, the claimant may not represent a class or bring a class or collective action, and any relief obtained shall be limited to provide a remedy only to redress the claimant's individual losses***. Any relief or remedy awarded must, to the extent possible, be pro-rated to provide relief or remedy solely to the individual claimant.

*See* Exhibit 1 to Motion to Dismiss § 11.09 (emphasis added).

As a matter of law, participants in the Plan are subject to the rules established by the plan sponsor and outlined in the governing plan document. *See Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 930 (6th Cir. 2014) (employers have "large leeway" to modify and amend their plans); *Conte v. Ascension Health*, 2011 WL 4506623, *2 (E.D. Mich. 2011) (ERISA plan is not a traditional bilateral contract between plaintiff and defendant); *see also Dorman v. Charles Schwab Corp.*, 780 Fed. Appx. 510, 512 (9th Cir. 2019) ("A plan participant agrees to be bound by a provision in the plan document when [she] participates in the plan while the provision is in effect."). Indeed, Plan documents routinely include rules for litigating claims related to a plan. *See, e.g.*, *Smith v. Aegon Companies Pension Plan*, 769 F.3d 922, 929-31 (6th Cir. 2014). Here, because the Plan itself precludes class or collective actions, the Court should strike Plaintiffs' class allegations.

## CONCLUSION

Plaintiffs have benefitted greatly from the very ESOP Transaction they now complain about. Plaintiffs' efforts to impose ERISA liability upon the Board Defendants is legally infirm

for the reasons stated above. Further, two of the named defendants lack standing, and the Plan itself precludes a class action. Accordingly, the claims against the Board Defendants should be dismissed *with prejudice* because further amendment as to the Board Defendants would be futile.

Dated: August 8, 2023

Respectfully submitted,

/s/ Jonathan Farmer
JONATHAN P. FARMER, BPR #020749
SPENCER FANE LLP
511 Union Street, Suite 1000
Nashville, TN 37219
(615) 238-6300
*jfarmer@spencerfane.com*

J. Christian Nemeth (admitted *pro hac vice*)
Robert M. Kline (admitted *pro hac vice*)
MCDERMOTT WILL & EMERY LLP
333 SE 2nd Avenue
Suite 4500
Miami, FL 33131-2184
(305) 347-6500
*jcnemeth@mwe.com*
*rkline@mwe.com*

*Counsel for Lawson H. Hardwick, III,*
*Matthew C. Clarke and Cecil O. Kemp, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2023, a copy of the foregoing Motion to Dismiss Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

Alyson S. Beridon
Benjamin A. Gastel
Herzfeld, Suetholz, Gastel, Leniski and Wall, PLLC
600 Vine St. Ste 2720
Cincinnatti, OH 45202
alyson@hsglawgroup.com

ben@hsglawgroup.com

Christopher M. Barrett
Douglas P. Needham
Robert Izard
Izard, Kindall & Raabe, LLP
29 South Main St., Ste 305
West Hartford, CT 06107
cbarrett@ikrlaw.com
dneedham@ikrlaw.com
firm@snlaw.net

Gregory Y. Porter
Mark G. Boyko
Ryan T. Jenny
Bailey Glasser LLP
1055 Thomas Jefferson St., N.W. Ste 540
Washington, DC 20007
gporter@baileyglasser.com
mboyko@baileyglasser.com
rjenny@baileyglasser.com

*Counsel for Plaintiffs*

Andrew D. Salek-Raham
Claire M. Lally
Lars C. Golumbic
Groom Law Group, Chtd
1701 Pennsylvania Avenue, NW
Suite 1200
Washington, DC 20009
Asalek-raham@groom.com
clally@groom.com
lgolumbic@groom.com

Mark E. Stamelos
Ford Harrison LLP
150 Third Avenue N. Ste 2010
Nashville, TN 37201
mstamelos@fordharrison.com

*Counsel for Defendant Miguel Paredes*
*& Prudent Fiduciary Services, LLC*

/s/ Jonathan P. Farmer
Jonathan P. Farmer