# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF
## TENNESSEE NASHVILLE DIVISION

LISA ARNOLD, BRANDI TROUT, and
SANDRA GOLDEN-WOODS, on behalf of
the Churchill Holdings, Inc. Employee Stock
Ownership Plan, and on behalf of a class of
all other persons similarly situated,

                **Plaintiffs,**

**v.**

MIGUEL PAREDES, PRUDENT
FIDUCIARY SERVICES, LLC, LAWSON
H. HARDWICK, III, MATTHEW C.
CLARKE, AND CECIL O. KEMP, JR.

                **Defendants.**

Case No.    3:23 -cv-00545

---

**PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM
OF LAW FOR PRELIMINARY APPROVAL OF SETTLEMENT**

**Table of Contents**

I.     INTRODUCTION ............................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND...................................... 2

   A.    Background and Motion Practice................................................................ 2

   B.    Discovery ................................................................................................... 2

   C. The Parties' Settlement Efforts .................................................................... 3

III.   SUMMARY OF THE PROPOSED SETTLEMENT TERMS ........................ 3

   A.    Benefits to the Class................................................................................... 3

   B.    Notice and Administration.......................................................................... 4

   C.    Case Contribution Awards to the Named Plaintiffs and Attorneys' Fees and Costs........ ..4

   D.    Release of Claims ...................................................................................... 5

   E.    Notice and Proposed Schedule of Events .................................................. 5

IV.    ARGUMENT ................................................................................................... 7

   A.    The Class defined by this Court Remains Appropriate as the Settlement Class ................ 7

      1.    The Class satisfies the requirements of Rule 23(a)......................................... 7

            a. The Settlement Class is sufficiently numerous…………………………………7
            b. There are common questions of law and fact…………………………………8
            c. The typicality requirement of Rule 23(a) is met………………………………9
            d. The proposed Class Representatives and their counsel will fairly and adequately protect the interests of the Class…………………………………………………11

      2.    The claims meet the requirements of certification under Rule 23(b)(1)..................... 13

      3.    Plaintiffs are represented by qualified and competent counsel .................................... 16

   B.    The Court Should Grant Preliminary Approval of the Settlement Because it Is Fair, Reasonable, and Adequate. ......................................................................... 17

      1.    The standards for preliminary approval are met. ........................................ 17

      2.    The class is adequately represented, the negotiations were at arm's length, and there is no suggestion of collusion. ................................................................................... 19

      3.    The complexity, expense, and likely duration of the litigation. ................................. 19

      4.    The effectiveness of the proposed method of distributing relief to the Class............... 21

      5.    The terms of the proposed award of attorneys' fees..................................................... 22

      6.    The proposal treats class members equitably relative to each other. ........................... 22

   V. CONCLUSION ................................................................................................ 23

Case 3:23-cv-00545     Document 96     Filed 04/17/25     Page 2 of 30 PageID #: 1539

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alday v. Raytheon Co.*,
  619 F. Supp. 2d 726 (D. Ariz. 2008) ......................................................................................15

*Allen v. GreatBanc Tr. Co.*,
  835 F.3d 670 (7th Cir. 2016) ...............................................................................................17

*In re Am. Med. Sys.*,
  75 F.3d at 1082 ...............................................................................................................9, 11

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997).....................................................................................................11, 15

*Baffa v. Donaldson*,
  222 F.3d 52 (2d Cir. 2000).................................................................................................12

*Baker v. Comprehensive Emp. Sols.*,
  227 F.R.D. 354 (D. Utah 2005) ..........................................................................................15

*Beattie v. CenturyTel, Inc.*,
  511 F.3d 554 (6th Cir. 2007) ...........................................................................................9, 11

*Bittinger v. Tecumseh Prods. Co.*,
  123 F.3d 877 (6th Cir. 1997) ...............................................................................................9

*Blackwell v. Bankers Tr. Co.*,
  No. 18-cv-141 (S.D. Miss.)................................................................................................17

*Brundle v. Wilmington Trust N.A.*,
  241 F. Supp. 3d 610 (E.D. Va. 2017), *aff'd*, 919 F.3d 763 (4th Cir. 2019)............................17

*Buus v. WAMU Pension Plan*,
  251 F.R.D. 578 (W.D. Wash. 2008) ....................................................................................15

*Casey v. Reliance Tr. Co.*,
  No. 18-cv-00424 (E.D. Tex.)..............................................................................................17

*Cent. Wesleyan Coll. V. W.R. Grace & Co.*,
  6 F.3d 177 (4th Cir. 1993) ...................................................................................................7

*Choate v. Wilmington Tr., N.A.*,
  No. 17-cv-250 (D. Del.)......................................................................................................17

*In re Citigroup Pension Plan ERISA Litig.*,
    241 F.R.D. 172 (S.D.N.Y. 2006) ....................................................................15

*Edwards v. City of Mansfield*,
    2016 WL 2853619 (N.D. Ohio May 16, 2016).............................................18

*Fink v. Wilmington Tr., N.A.*,
    No. 19-cv-1193 (D. Del.) .............................................................................17

*Fitzergald v. P.L. Marketing, Inc.*,
    2020 WL 7764969 (W.D. Tenn. Feb 13, 2020)...........................................18

*Gamache v. Hogue*,
    338 F.R.D. 275 (M.D. Ga. 2021) .................................................................14

*Gamino v. KPC Healthcare Holdings, Inc.*,
    2021 WL 7081190 (C.D. Cal. Aug. 6, 2021)...............................................14

*Godfrey v. GreatBanc Tr. Co.*,
    No. 18-cv-7918 (N.D. Ill.) ...........................................................................17

*Gunnells v. Heathplan Servs., Inc.*,
    348 F. 3d 417 (4th Cir. 2003) ......................................................................12

*Int'l Union v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ..................................................................17, 19

*Jessop v. Larsen*,
    No. 14-cv-00916 (D. Utah) ..........................................................................17

*Kanawi v. Bechtel Corp.*,
    254 F.R.D. 102 (N.D. Cal. 2008)...................................................................9

*Kerns v. Caterpillars, Inc.*,
    No. 06-1113, 2007 WL 2044092 (M.D. Tenn. July 12, 2007) ......................9

*Knight v. Lavine*,
    2013 WL 427880 (E.D. Va. Feb. 4, 2013)...................................................15

*Murray v. E\*Trade Financial Corp.*,
    240 F.R.D. 392 (N.D. Ill. 2006)...................................................................16

*Nistra v. Reliance Trust Co.*,
    No. 16 C 4773 (N.D. Ill.) .......................................................................14, 17

*In re Nortel Networks Corp. ERISA Litig.*,
    No. 3:03-1537, 2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009) ..............8, 12

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)........................................................................................13, 14

*Perez v. Bruister*,
    823 F.3d 250 (5th Cir. 2016) ......................................................................13

*Pettway v. Am. Cast Iron Pipe Co.*,
    576 F.2d 1157 (5th Cir. 1978) .....................................................................21

*Senter v. Gen. Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976) ........................................................................9

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ........................................................................8

*Surowitz v. Hilton Hotels Corp.*,
    383 U.S. 363 (1966)....................................................................................12

*Swain v. Wilmington Tr., N.A.*,
    No. 17-071 (D. Del.) ...................................................................................17

*Titus v. Burns & McDonnell, Inc. Employee Stock Ownership Plan*,
    2010 WL 3713666 (W.D. Mo. Sept. 13, 2010) ...........................................9

*Ward v. Dixie Nat'l Life Ins. Co.*,
    595 F.3d 164 (4th Cir. 2010) ......................................................................11

*In re Williams Companies ERIS Litig.*,
    231 F.R.D. 416 (N.D. Okla. 2005)...............................................................15

**Statutes**

29 U.S.C. § 1104(a)(1)......................................................................................8

29 U.S.C. §§ 1109(a), 1132(a)(2) ...................................................................10

CAFA ................................................................................................................6

Employee Retirement Income Security Act, 29 U.S.C. § 1000, *et seq.* ...........1

ERISA ...................................................................................................... *passim*

ERISA § 409(a)...............................................................................................10

ERISA § 502(a)(2)...........................................................................................10

**Rules and Regulations**

Fed. R. Civ. P. 23 .......................................................................................7, 18

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................18

Fed. R. Civ. P. 23(g) ...............................................................................11, 16

Fed. R. Civ. P. 23(g)(1)(A) ...................................................................16

Fed. Rule Civ. Proc. 23, 28 U .............................................................14

Rule 23(a) .......................................................................................7, 9, 13

Rule 23(a)(1) ...............................................................................................7

Rule 23(a)(2) ...............................................................................................8

Rule 23(a)(3) ...............................................................................................9

Rule 23(a)(4) ......................................................................................11, 12

Rule 23(b) ......................................................................................7, 13

Rule 23(b)(1) .............................................................................................13

Rule 23(b)(1)(A) ...............................................................................15, 16

Rule 23(b)(1)(B) .......................................................................13, 14, 15

Rule 23(e) ...........................................................................................17, 18

Rule 23(e)(1) ......................................................................................17, 22

Rule 23(e)(2) .............................................................................................18

Rule 23(e)(2)(A) .......................................................................................19

Rule 23(e)(2)(B) .......................................................................................19

Rule 23(e)(2)(C)(i) ...................................................................................19

Rule 23(e)(2)(C)(ii) ..................................................................................21

Rule 23(e)(2)(C)(iii) .................................................................................22

Rule 23(e)(2)(C)(iv) .................................................................................19

Rule 23(e)(3) .............................................................................................18

Rules 23(a)(4) and 23(g) .........................................................................13

Case 3:23-cv-00545    Document 96    Filed 04/17/25    Page 6 of 30 PageID #: 1543

Plaintiffs Lisa Arnold, Brandi Trout, and Sandra Golden-Woods ("Plaintiffs"), individually and as Class Representatives, hereby move for an order preliminarily approving a class action settlement agreement between Plaintiffs and Defendants Miguel Paredes and Prudent Fiduciary Services, LLC (together, "Trustee Defendants"); Lawson H. Hardwick, III ("Hardwick"); Matthew C. Clarke ("Clarke"), and Cecil O. Kemp, Jr. ("Kemp") (Hardwick, Clarke, and Kemp collectively the "Board Defendants", and collectively with the Trustee Defendants, the "Class Action Defendants"); approving Class Notice to the Settlement Class; and setting a date for a Fairness Hearing.[1]

## I. INTRODUCTION

Subject to the Court's approval, the Parties have settled this Employee Retirement Income Security Act, 29 U.S.C. § 1000, *et seq.*, ("ERISA") class action (the "Class Action"). The Parties have agreed to resolve all matters in controversy between them in the Class Action for the sum total of $850,000. Should the Court grant approval, every eligible Class Member will receive their portion of the Net Settlement Amount[2] according to the Plan of Allocation.

The proposed settlement ("Settlement") satisfies all the criteria for preliminary approval and provides an excellent result for the Settlement Class. For these reasons, discussed in more detail below, Plaintiffs request that the Court grant this motion.

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

[2] The Net Settlement Fund consists of the Class Settlement Amount, plus accrued interest, minus (a) any Court-approved Attorneys' Fees and Costs; (b) all Administrative Expenses; and (c) any Court-approved Case Contribution Awards.

1

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Background and Motion Practice

The Plan acquired ownership in Churchill Holdings, Inc. ("Churchill") in two transactions from selling shareholder and Churchill founder Lawson H. Hardwick, III ("Hardwick"). The transactions were approved by the Board Defendants and the Trustee. The first, in 2013, precedes the statutory period. Post-2013, however, the Plan owned 49% of the shares of the Company and was entitled to receive dividends on those shares. But Plaintiffs allege the Plan did not receive the benefit of those dividends. The Plan acquired the remaining 51% of the shares in a 2020 Transaction.

Plaintiffs filed their Complaint on May 26, 2023. (Dkt. 1). Defendants each moved to dismiss the Complaint on August 8, 2023. (Dkt. 39, 41). After those motions were fully briefed, the Court denied the Churchill Defendants' motion and denied in part the Trustee Defendants' motion, on January 31, 2024. Dkt. 62. The Court granted Plaintiffs' Motion for Class Certification on August 2, 2024.

### B. Discovery

The Parties completed document discovery and Plaintiffs reviewed the documentation produced with respect to the treatment of dividends and the reasonableness of the 2020 Transaction. After providing relevant documents to their experts, Plaintiffs met with their experts to assess Defendants' compliance with ERISA and damages. *See* Declaration of Gregory Porter, attached hereto as Exhibit A, ("Porter Decl."), ¶¶ 6–7. Plaintiffs' Counsel is experienced in litigating ESOP cases and therefore understands the key information needed to evaluate Plaintiffs' claims—that information was produced

2

during the informal discovery process. *Id.* ¶¶ 6–13. Plaintiffs' Counsel's expert is well versed in private company purchase and sale transaction who prepared preliminary analyses regarding the terms and process of the ESOP Transaction and advised Plaintiffs' Counsel before and during settlement negotiations. *Id.* ¶ 6.

### C. The Parties' Settlement Efforts

The Parties to the Class Action mediated this matter in an all-day mediation with Stephen Lucke, an experienced mediator with decades of ERISA-focused experience. Porter Decl. ¶ 8. The Parties drafted and submitted comprehensive mediation statements to Mediator Lucke that focused all sides on the key issues. *Id.* The mediation attendees vigorously engaged in the mediation process. *Id.* After much deliberation, discussion, and compromise, the Parties agreed to resolve the disputes according to the terms laid out in the Settlement Agreement, attached as Exhibit A to the Porter Declaration. *Id.*

## III. SUMMARY OF THE PROPOSED SETTLEMENT TERMS

The material terms of the Settlement Agreement are summarized below. Consistent with the previously-certified class, the Settlement Class is:

> All vested participants in the Churchill Holdings, Inc. Employee Stock Ownership Plan and the beneficiaries of such participants on May 26, 2017, or anytime thereafter. Excluded from the Class are the Defendants and their immediate families; and legal representatives, successors, and assigns of any such excluded persons.

Dkt. 84.

### A. Benefits to the Class

The Board Defendants have agreed to pay $850,000 into a Qualified Settlement

Fund (the "Class Settlement Amount") to settle all claims in this matter. Settlement Agmt., ¶¶ 7.1. The funds remaining after deduction from the Class Settlement Amount for (a) all Attorneys' Fees and Costs; (b) all Administrative Expenses; and (c) any Case Contribution Awards shall constitute the "Net Settlement Amount." *Id.* ¶¶ 1.23, 7.1. The Net Settlement Amount will be distributed to the Class Members pursuant to the Plan of Allocation, found in Section 8.2 of the Settlement Agreement. *Id.* ¶ 8.2. Each Class Member's payment will be proportional to their shares over the Settlement Period, with added credit for shares owned during the 2020 Transaction. *Id*.

## B. Notice and Administration

The Settlement Administrator, Rust, shall be responsible for disseminating Class Notice, establishing a website for case documents, and establishing a telephone support line. If the Court grants final approval of the Settlement, the Settlement Administrator shall also implement the Plan of Allocation, including effectuating rollover requests by Class Members and mailing checks to other Class Members.

The Settlement Administrator shall also serve as Escrow Agent and shall be responsible for establishing and maintaining a Qualified Settlement Fund to hold the Gross Settlement Amount.

## C. Case Contribution Awards to the Named Plaintiffs and Attorneys' Fees and Costs

Subject to Court approval, Plaintiffs' Counsel's fees, costs and expenses, and Case Contribution Awards to the three Named Plaintiffs, if any, shall be paid from the Gross Settlement Amount. Settlement Agmt. ¶¶ 10.3. Plaintiffs shall petition the Court for Case

4

Contribution Awards not to exceed $3,000 for each Named Plaintiff in recognition of their service to the Class. *Id.* Plaintiffs' Counsel will also petition the Court for an award of Attorneys' Fees and Expenses in an amount not exceeding 33 1/3% of the Class Settlement Amount. *Id.* ¶ 10.1.

### D. Release of Claims

In exchange for payment of the Class Settlement Amount by Defendants and satisfaction of the conditions required by the Settlement Agreement, Plaintiffs, the Settlement Class, and the Plan will release the Defendants and other Released Parties from any "Released Claims" as provided for in Section 3.1 of the Settlement Agreement. In summary, the released claims include those claims that pertain to the Plan and/or relating to the valuation of the ESOP, handling of ESOP dividends, and the 2020 Transaction referenced in the Complaint. The Released Parties, Released Claims, and the covenant not to sue are set forth in full in the Settlement Agreement. Settlement Agmt. ¶¶ 3.1–3.4.

### E. Notice and Proposed Schedule of Events

The Settlement Agreement provides that the Parties will provide, or cause to be provided, the names, last known addresses of members of the Settlement Class, and number of shares allocated to the Plan account of each member of the Settlement Class to the Settlement Administrator. Plaintiffs and Defendants shall use reasonable efforts to respond timely to written requests, including by e-mail, from the Settlement Administrator for any readily accessible data that they have from obtained from discovery, the settlement process, or through other reasonable efforts that is reasonably necessary to determine the feasibility of administering the Plan of Allocation or to implement the Plan of Allocation. *Id.* ¶ 8.

The proposed Class Notice (Exhibit A to the Settlement Agmt.) provides all the information necessary to inform Class Members about the nature of the Class Action, the terms of the Settlement, and the procedures for entering an appearance to be heard or to object to the Settlement. In addition, key court documents, including the Amended Complaint, the Settlement Agreement, preliminary approval papers, Plaintiffs' Motion for Award of Attorneys' Fees, and Plaintiffs' Motion for Final Approval will be posted on the settlement website. The Class Notice will be mailed to the Settlement Class and shall be posted on a website for the Settlement Class. For returned mail, the Settlement Administrator will engage in standardized processes to identify and locate Class Members. The proposed schedule is set forth below:

| Event | Timing |
|---|---|
| CAFA Notice | Within ten (10) days of Named Plaintiffs filing the Preliminary Approval Motion |
| Preliminary Approval Hearing | TBD |
| Motion for award of attorneys' fees and expenses, and Case Contribution Awards for Named Plaintiffs | No later than forty-five (45) days before the Fairness Hearing |
| Motion for final approval of settlement | No later than forty-five (45) days before the Fairness Hearing |
| Objections to the Settlement, to the requested Attorneys' Fees and Costs, Case Contribution Awards, and/or Administrative Expenses | Must be filed or postmarked on or before thirty (30) days before the Fairness Hearing |
| Notice of intention to appear at Fairness Hearing | Must be filed or postmarked at least fourteen (14) calendar days before the Fairness Hearing |
| Fairness Hearing | TBD (at least 90 days from the mailing of Class Notice to the Settlement Class and the date of mailing of CAFA Notices) |

# IV. ARGUMENT

## A. The Class defined by this Court Remains Appropriate as the Settlement Class

The Court has previously certified the Class with an identical class definition as the proposed Settlement Class. Dkt. 84.

Certification of a class is required where the plaintiff demonstrates the four prerequisites of Rule 23(a) and at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. As in other ERISA class actions, those requirements are easily met here.

### 1. The Class satisfies the requirements of Rule 23(a)

Rule 23(a) provides that a class must satisfy four preconditions: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

#### a. The Settlement Class is sufficiently numerous.

Rule 23(a)(1) permits class treatment where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the Plan's filings indicate that in 2019, the Plan included over 300 participants. Porter Decl. Ex. D. That is sufficient to satisfy numerosity. *Cent. Wesleyan Coll. V. W.R. Grace & Co.*, 6 F.3d 177, 183 (4th Cir. 1993) (noting district court's findings "that some 480 potential class members would easily satisfy the numerosity requirement"). The numerosity requirement is satisfied. *See also Chesemore*, 276 F.R.D. at 510 (in ESOP case, joinder of 288 members of subclass held impracticable).

7

**b. There are common questions of law and fact.**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "The commonality requirement is particularly easy to meet when the defendant has engaged in a course of conduct which gives rise to a single cause of action." *In re Nortel Networks Corp. ERISA Litig.*, No. 3:03-1537, 2009 WL 3294827, *5 (M.D. Tenn. Sept. 2, 2009). Indeed, because an ERISA fiduciary breach action is an action on behalf of a plan regarding duties owed at the plan level, "commonality is quite likely to be satisfied." *Schering*, 589 F.3d at 599 n. 11.

Here, the Plan's fiduciaries owed their duties to the Plan and made decisions at the Plan level affecting the Plan as a whole, and hence, all participants. *See* 29 U.S.C. § 1104(a)(1)("a fiduciary shall discharge his duties with respect to a plan…". All Class Members had the same investment, Churchill Stock, and all Churchill Stock in the ESOP was treated equally through Defendants' respective decisions as to the ESOP as a whole. Therefore, each element of Plaintiffs' claims— whether the defendants acted as fiduciaries, breached their fiduciary duties, and caused a loss to the Plan are common, rather than individualized, questions. *See, Braden*, 588 F.3d at 594. "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)..

Put simply, commonality is evident because "Plaintiffs' claims do not focus on injuries caused to each individual [ESOP Participant], but rather on how the Defendants' conduct affected the pool of assets that make up the [ESOP]." *Hurtado*, 2019 WL 1771797,

8

at *7 (quoting *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 109 (N.D. Cal. 2008)). The commonality requirement is met.

### c. The typicality requirement of Rule 23(a) is met.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys.,* 75 F.3d at 1082). "A representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Id.* (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n. 31 (6th Cir. 1976)). Thus, even if some class members may have benefitted from the challenged conduct, that "goes only to the issue of damages and does not preclude a finding that the typicality requirement is satisfied." *Id.* at 561–62 (finding claims airing "from the same allegedly deceptive billing practice" to be typical because allegation that practice violated statute).

Like commonality, the typicality requirement "is not demanding." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) (citations omitted); *Kerns v. Caterpillars, Inc.*, No. 06-1113, 2007 WL 2044092, *5 (M.D. Tenn. July 12, 2007); *Titus v. Burns & McDonnell, Inc. Employee Stock Ownership Plan*, 2010 WL 3713666, at *2 (W.D. Mo. Sept. 13, 2010) (finding typicality where the "legal questions raised by Plaintiff,

9

which are typical to all potential class members' claims, turn on whether or not Defendants' conduct violated ERISA and whether this conduct damaged the class").

As noted above, this action is brought pursuant to ERISA § 502(a)(2) "on behalf of the plan," and any recovery of losses must be paid to the plan pursuant to ERISA § 409(a). 29 U.S.C. §§ 1109(a), 1132(a)(2). Courts generally find that ERISA cases arising under Section 502(a)(2) meet the typicality requirement because the "action is brought on behalf of the Plan, not the individual participants, so that Plaintiffs' claims, of necessity, are typical of the claims of the members of the proposed class." *Lively*, 2007 WL 685861, at *10. Here, Plaintiffs' ERISA claims are brought on behalf of the Plan against Defendants for losses allegedly attributable to their breaches of ERISA. The alleged violations of ERISA challenged by the Plaintiffs affect them and the class members in precisely the same fashion. All class members suffered injury to the extent the Plan allegedly paid more than fair market value for Churchill stock in the ESOP Transaction and all allegedly received less than they should have as a result of the Defendants' treatment of stock dividends in the ESOP prior to the Transaction.

Because of the harm common to all Plan participants stated in Plaintiffs' well-pleaded allegations, "Plaintiffs' circumstances [are not distinquishable] from other ESOP Participants and beneficiaries." *Hurtado*, 2019 WL 1771797, at *8 (typicality established because allegations focus on the conduct of defendants as to the ESOP as a whole and not on conduct specific to any particular plaintiff). Moreover, the remedies pursued will benefit the Plan and ultimately all class members in a like manner. Thus, as the claims of all class members stem from a common events (the ESOP Transaction and the ESOP's dividends)

10

and are based on the same legal or remedial theory on behalf of the Plan, Plaintiffs' claims are not merely "typical," but identical to other class members' claims.

### d. The proposed Class Representatives and their counsel will fairly and adequately protect the interests of the Class.

Rule 23(a)(4) requires that plaintiffs "fairly and adequately protect the interests of the class," meaning that a plaintiff must have the same interests and suffer the same injury as the class. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 625–26 (1997); *Lively*, 2007 WL 685861, at *11. A court "reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another." *Beattie*, 511 F.3d at 562–63 (citation omitted); *In re Am. Med. Sys.*, 75 F.3d at 1083 [Rule 23(a)(4) requires the representative to (1) "have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel"]; *see also Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 625 (1997); Fed. R. Civ. P. 23(g).

First, there is no evidence of conflict between Plaintiff and the interests of the Class. Because Plaintiffs are pursuing claims on behalf of the Plan, and are not pursuing individual claims, there is no conflict between Plaintiffs' individual interests and the interests of the class. *Krueger*, 304 F.R.D. at 574–75. For a claimed conflict to be relevant to Rule 23(a)(4), it "must be fundamental" and not "merely speculative or hypothetical." *See, e.g.*, *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010).

Plaintiffs also have a sufficient understanding of their claims and are committed to

11

vigorously prosecuting this action on behalf of their fellow participants. "When considering named Plaintiffs' involvement in the case, 'the threshold for establishing adequacy is quite low.'" *In re Nortel Networks Corp. ERISA Litig.*, 2009 WL 3294827 at *12. A representative need not have detailed knowledge of the facts, particularly in complex cases "in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge[.]" *Gunnells v. Heathplan Servs., Inc.*, 348 F. 3d 417, 430 (4th Cir. 2003); *Baffa v. Donaldson*, 222 F.3d 52, 61 (2d Cir. 2000) (noting Supreme Court has "expressly disapproved" of attacking "the adequacy of a class representative based on the representative's ignorance"); *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366–68, 372–74 (1966). The more important factor is whether the plaintiff is willing and able to devote time to the case by participating in discovery. *See In re Nortel Networks Corp. ERISA Litig.*, 2009 WL 3294827 at *10 (plaintiffs were adequate where they maintained contact with counsel, reviewed the complaint, and understood the claims in general terms).

The Named Plaintiffs have been actively engaged in the litigation, and they have provided documents to counsel used to draft the Complaint. *See* Porter Decl. ¶ 16. They have regularly conferred with counsel on the progress of the case. *Id*. They have no conflicts. *Id*. The Named Plaintiffs assert claims on the Plan's behalf and request no individual relief. *Id*. Therefore, the adequacy requirement of Rule 23(a)(4) is met.

Plaintiffs' Counsel in this case are well-qualified and experienced as described in detail in the Declaration of Gregory Porter. Porter Decl. ¶¶ 9–13 and Exhibit C to Porter Decl.. Not only do the attorneys have extensive experience litigating class actions,

12

including numerous ESOP cases, they have worked diligently to litigate the claims here. There should be no question that Plaintiffs' Counsel brought sufficient skill and resources to litigate this case. Thus, Plaintiffs' Counsel satisfy Rules 23(a)(4) and 23(g).

### 2. The claims meet the requirements of certification under Rule 23(b)(1).

In addition to meeting the requirements of Rule 23(a), claims must meet at least one of the three provisions of Rule 23(b). The claims meet the requirement of Rule 23(b)(1). A Rule 23(b)(1)(B) class action may be maintained where "prosecuting separate actions by . . . individual class members would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (23(b)(1)(B) applies where "the shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members"). In private company ESOP cases where the participants' accounts in the ESOP's trust hold the employer stock for which the ESOP overpaid, the participants are injured along with their ESOP such that their losses are "coterminous" with their plans' losses. *Perez v. Bruister*, 823 F.3d 250, 258 (5th Cir. 2016). It is well-established, in Supreme Court and ERISA case law, that 23(b)(1)(B)'s impairment concern is raised in lawsuits like this one that seek losses to a trust in which non-party beneficiaries have an

13

interest.[3] For this reason, the Court should certify the class.

This action for plan-wide relief, encompassing the losses to every class member's Plan account, falls within 23(b)(1)(B) as there is great risk that separate actions by the class members would be dispositive of the interests of the other non-party members or would substantially impair or impede their ability to protect their interests. The central issue is whether the Defendants caused losses to the Plan (or more specifically, its trust) in breach of its ERISA duties when they allegedly caused the Plan to purchase Churchill above fair market value, and the secondary issue is whether the Board Defendants caused losses to the Plan, and its trust, in breach of its ERISA duties when Churchill allegedly used the ESOP's Churchill Stock dividends to benefit Churchill and the minority shareholder at the expense of the Plan.

A judgment for the Plaintiffs on either claim would apply equally to the individual claims of all class members allocated that stock and holding beneficial interests in the

---

[3] *See Ortiz*, 527 U.S. at 834 (recognizing risk of impairment in "actions charging 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class' of beneficiaries, requiring an accounting or similar procedure 'to restore the subject of the trust'") (quoting Advisory Committee's Notes on Fed. Rule Civ. Proc. 23, 28 U.S.C.App., p. 696); *Nistra*, 2018 WL 835341, at *3 (following *Ortiz*, holding "Because this is a representative action on behalf of the Plan, resolution of the case will affect the interests of all Plan beneficiaries. The proposed class therefore satisfies Rule 23(b)(1)(B)"); *Gamache v. Hogue*, 338 F.R.D. 275, 292 (M.D. Ga. 2021) ("because the fiduciary claims are brought on behalf of the ESOP, individual adjudication would necessarily affect—or be 'dispositive of the interest of'—plan participants absent from that individual action, or otherwise 'would substantially impair or impede their ability to protect their interests" as participants in the ESOP'"); *Gamino v. KPC Healthcare Holdings, Inc.*, 2021 WL 7081190, at *6 (C.D. Cal. Aug. 6, 2021) ("given the shared character of the rights invoked under the ESOP and the relief sought on behalf of the ESOP, a 'judgment for or against one ESOP Participant ... plainly affects the rights of all ESOP Participants'"); *Douglin*, 115 F. Supp. 3d at 412 (citing *Ortiz* and approving 23(b)(1)(B) class in ESOP case).

Plan's trust. Conversely, if Plaintiff were to lose on the merits, Defendants would certainly make *res judicata* and collateral estoppel arguments against any other participant who sought to hold it accountable for the wrongs at issue here. Further, any money recovered will be paid to the Plan's trust for all its losses, meaning that resolution of these issues will affect *all* participants allocated Plan stock after the Transaction, who are entitled to a proportional share of the recovery based on their individual allocations. *See Chesemore*, 276 F.R.D. at 517; *see also Neil*, 275 F.R.D. at 268. Thus, certification remains appropriate under Rule 23(b)(1)(B).

Under Rule 23(b)(1)(A) a class action may also be maintained where "prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Rule 23(b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike . . . , or where the party must treat all alike as a matter of practical necessity." *Amchem*, 521 U.S. at 614 (citations omitted). "ERISA requires plan administrators to treat all similarly situated participants in a consistent manner." *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008) (citing cases). For this reason, courts have certified cases involving violations of ERISA under Rule 23(b)(1)(A).[4]

---

[4] *See Neil*, 275 F.R.D. at 267–68; *Chesemore*, 276 F.R.D. at 517; *Brieger*, 245 F.R.D. at 357; *Knight v. Lavine*, 2013 WL 427880, at *4 (E.D. Va. Feb. 4, 2013); *Baker v. Comprehensive Emp. Sols.*, 227 F.R.D. 354, 359 (D. Utah 2005); *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 180 (S.D.N.Y. 2006); *Smith*, 238 F.R.D. at 617–18; *Buus v. WAMU Pension Plan*, 251 F.R.D. 578, 588 (W.D. Wash. 2008); *In re Williams Companies ERIS Litig.*, 231 F.R.D. 416, 425 (N.D. Okla. 2005).

The risk of inconsistent adjudications is similarly apparent in this case. Separate lawsuits over the valuation of the ESOP Transaction or the treatment of dividends prior to the ESOP Transaction could result in different outcomes. Inconsistent adjudications on the fair market value of Churchill stock at the time of the ESOP Transaction obtained by similarly situated participants would make it impossible for Plan fiduciaries to treat similarly situated participants alike with consistent distributions from the Plan. Accordingly, certification under Rule 23(b)(1)(A) is appropriate.

### 3. Plaintiffs are represented by qualified and competent counsel

Rule 23(g) requires the appointment of adequate class counsel. The adequacy of counsel depends on whether a plaintiff's proposed counsel is "experienced, competent, qualified, and able to conduct the litigation vigorously." *Murray v. E\*Trade Financial Corp.*, 240 F.R.D. 392, 397 (N.D. Ill. 2006). In making this determination, courts examine counsel's work on the lawsuit, experience in handling class and complex actions, knowledge of the applicable law, and resources to devote to the action. *See* Fed. R. Civ. P. 23(g)(1)(A). As shown in the accompanying biography and related materials of lead counsel Gregory Y. Porter, and his law firm Bailey & Glasser LLP, these considerations weigh in favor of Plaintiffs' proposed class counsel.

Proposed class counsel have diligently prosecuted this action, including but not limited to investigating and preparing the Complaint; meeting and conferring with defense counsel; successfully defending against Defendants' Motion to Dismiss; and certifying the Class. Porter Decl. ¶ 6.. Mr. Porter and his fellow counsel of record, Mark Boyko and Laura Babiak, will fairly and adequately represent the Class's interests. They are experienced in

16

successfully handling ERISA class actions and have litigated many class actions involving employer stock plans and investments. *See* Porter Decl. ¶¶ 9–13 & Ex. C thereto. They have served or are serving as lead counsel or co-lead counsel for classes in numerous cases alleging violations of ERISA by ESOP fiduciaries, including:

- Setting pleading standards for private company ESOP litigation. *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670 (7th Cir. 2016);

- Obtaining a nearly $30 million judgment for an ESOP at trial and defending the judgment on appeal, which established standards for ESOP fiduciaries. *Brundle v. Wilmington Trust N.A.*, 241 F. Supp. 3d 610 (E.D. Va. 2017), *aff'd*, 919 F.3d 763 (4th Cir. 2019);

- Obtaining a $13.36 million settlement after week of trial. *Nistra v. Reliance Trust Co.*, No. 16 C 4773 (N.D. Ill.); and

- Settling several ESOP disputes before trial: *Jessop v. Larsen*, No. 14-cv-00916 (D. Utah) ($19.8MM settlement); *Swain v. Wilmington Tr., N.A.*, No. 17-071 (D. Del.) ($5MM); *Casey v. Reliance Tr. Co.*, No. 18-cv-00424 (E.D. Tex.) ($6.25MM); *Choate v. Wilmington Tr., N.A.*, No. 17-cv-250 (D. Del.) ($19.5MM); *Blackwell v. Bankers Tr. Co.*, No. 18-cv-141 (S.D. Miss.) ($5MM); *Fink v. Wilmington Tr., N.A.*, No. 19-cv-1193 (D. Del.) ($5.5MM); *Godfrey v. GreatBanc Tr. Co.*, No. 18-cv-7918 (N.D. Ill.) ($16.5MM).

## B. The Court Should Grant Preliminary Approval of the Settlement Because it Is Fair, Reasonable, and Adequate.

### 1. The standards for preliminary approval are met.

Rule 23(e) provides that a class action cannot be settled without court approval and notice to the class. At preliminary approval, the court must determine whether the settlement justifies giving notice of the settlement to the class. Rule 23(e)(1).

The Sixth Circuit recognizes that the law favors the settlement of class action lawsuits. *Int'l Union v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007). Approval

17

of a fair and reasonable settlement agreement promotes the public's interest in encouraging settlement of litigation. *Edwards v. City of Mansfield*, 2016 WL 2853619 (N.D. Ohio May 16, 2016).

Rule 23, as amended in 2018, provides specific direction to federal courts considering whether to grant preliminary approval of a class action settlement and approve the issuance of notice. Fed. R. Civ. P. 23(e), Committee Notes. The court must be satisfied that it "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see Fitzergald v. P.L. Marketing, Inc.,* 2020 WL 7764969, *4 (W.D. Tenn. Feb 13, 2020).

The factors that provide guidance regarding this determination are as follows:

(A)     the class representatives and counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)     the costs, risks, and delay of trial and appeal;

    (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)     the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

Rule 23(e)(2).

Prior to the 2018 amendments, the Sixth Circuit traditionally also considered: (1)

18

the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement. *See Int'l Union*, 497 F.3d at 631.

Plaintiffs will address each of these factors to the extent they are applicable, many of which overlap.[5]

Ultimately, to approve the proposed settlement the court must determine that it is fair, reasonable and adequate.

### 2. The class is adequately represented, the negotiations were at arm's length, and there is no suggestion of collusion.

Rule 23(e)(2)(A), requiring adequate representation by the Plaintiffs and their counsel is addressed in Section IV(A)(1)(d) above. In addition, and in satisfaction of Rule 23(e)(2)(B), the Parties' negotiations were at arm's length, extensive and hard fought, with the assistance of a professional, experienced class action mediator. *See* Section II(C) above; Porter Decl. ¶ 8. Similarly, the arm's length nature of the negotiations, and the vigorous litigation of the Action, establish a lack of collusion, the first *Int'l Union* factor. There is no suggestion of fraud or collusion in this case, where the proposed class settlement was the product of rigorous, hard-fought negotiations conducted at arm's-length. GM, 497 F.3d at 631.

### 3. The complexity, expense, and likely duration of the litigation.

Rule 23(e)(2)(C)(i) and the second and fourth *GM* factor, require the court to

---

[5] There is no agreement required to be produced under Rule 23(e)(2)(C)(iv), and since Class Notice has not yet been sent, the opinion of the Class (*Int'l Union* factor #6) cannot be evaluated yet.

consider the adequacy of the relief obtained, in light of the risk, complexity, cost, and likely duration of the litigation.

Here, the litigation would be even more lengthy and expensive if this Action were to proceed further. Plaintiffs faced significant risks. Plaintiffs and Defendants had vastly different views about Defendants' actions, their potential liability, and the likely outcome of the litigation. Plaintiffs' core allegations regarding the 2020 Transaction rested on facts that were strongly contested by Defendants, including whether the Transaction was in the best interest of the Plan, whether the Plan paid too much for its stock, and whether there were negative facts that were ignored by or not sufficiently investigated by the Trustee Defendants during the due diligence and negotiation process.

Defendants vigorously denied all of the allegations, asserted affirmative defenses, and otherwise defended its actions with respect to the 2020 Transaction. Defendants pointed to evidence that in their view supported the conclusion that they had no liability, including significant documentary evidence of processes undertaken by the Trustees to evaluate the 2020 Transaction and its fairness to the Plan. If the Action were to proceed through trial, Plaintiffs would have to overcome these defenses and arguments.

Plaintiffs and Defendants also strongly disagree on the proper measure of damages. Defendants contend that the Plan and its participants were not harmed at all. The Parties have exchanged position papers supporting their differing views of what a proper measure of damages should be and presented their theories extensively in the mediation. That core dispute had not been resolved at the time the Parties reached their Settlement, and the uncertainty put both Parties at great risk.

20

These fact intensive inquiries would have led to a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence would carry the day.

In light of the inherent uncertainty, and potential for delay, a settlement of $850,000—approximately $850 per participant[6] before fees and other costs are applied—is a good result for the Class. "In the context of a class action settlement, compromise is the essence of a settlement, and the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Klein*, 705 F. Supp. 2d at 649 (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 n.69 (5th Cir. 1978)).

Considering the costs, risks and delay of trial and appeal, the immediate and certain recovery of $850,000 outweighs the uncertain possibility of a greater amount in the future, particularly given the amount of time it would take—including dispositive motions, trial, post-trial and post-judgment briefing, and appeals—for any judgment to be reduced to actual payment to Plan participants.

### 4. The effectiveness of the proposed method of distributing relief to the Class.

Rule 23(e)(2)(C)(ii), examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims. Here, the Settlement Agreement contemplates the Parties providing, or causing to be provided, the names and last known addresses of members of the Settlement Class, and the

---

[6] Based on Form 5500s filed during the class period.

number of vested shares of Churchill stock that were allocated to their ESOP account in each year of the Settlement Period to the Settlement Administrator. Settlement Agmt. ¶ 8.2. The Settlement Administrator will use that information and follow the Plan of Allocation which is based on a pro rata allocation premised on each Class Members' percentage of vested Churchill shares. *Id*. at ¶ 8.2. All Class Members will receive a check directly from the Settlement Administrator if they do not opt to rollover their recovery to a Qualified Retirement Account.

### 5. The terms of the proposed award of attorneys' fees.

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees, including timing of payment. As described above in Section III(C), Plaintiffs' Counsel will file an application seeking an award of attorneys' fees and expenses in an amount not exceeding 33 1/3% of the Class Settlement Amount and distributed from the common fund. Settlement Agmt. ¶ 10.1.

### 6. The proposal treats class members equitably relative to each other.

As described in Section III(B) above, the Parties have agreed, subject to Court approval, to a Notice Plan, which calls for individual mailed notice to the Settlement Class. This notice and the manner in which it will be disseminated satisfies Rule 23(e)(1) and constitutional due process concerns. As noted above, the ultimate allocation will be premised on the percentage of shares held by each Class Member.

Plaintiffs request that the Court approve Rust as Settlement Administrator and Escrow Agent. Rust has extensive experience in the administration of settlements of this type. *See* Rust Resume, attached as Exhibit 2 to the Porter Decl.

22

Finally, the Parties request that the Court schedule a Fairness Hearing on Plaintiffs' motion for final approval of the Settlement and motion of an award of reasonable attorneys' fees and Case Contribution Awards to the Named Plaintiffs, as set forth in the proposed Preliminary Approval Order. This will establish a reasonable and efficient process for disseminating notice, providing the opportunity for Class Members to object, and considering final approval of the Settlement.

## V. CONCLUSION

The proposed settlement meets the standard for preliminary approval. Accordingly, Plaintiffs respectfully requests that the Court issue an Order: (a) granting preliminary approval of the Settlement Agreement, attached to the Porter Declaration as Exhibit 1; (b) approving the proposed Class Notice, Exhibit A to the Settlement Agreement; (c) appointing Rust as the Settlement Administrator and Escrow Agent; (d) approving the Plan of Allocation; and (e) setting a date for a Fairness Hearing.

Dated: April 17, 2025

/s/ *Gregory Y. Porter*
Gregory Y. Porter
Mark G. Boyko
Bailey & Glasser LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
202-463-2101
Fax: 202-463-2103
gporter@baileyglasser.com
rjenny@baileyglasser.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of April 2025, a copy of the foregoing

document was served on all counsel of record via ECF.

*/s/ Gregory Y. Porter*
Gregory Y. Porter
