IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF
TENNESSEE NASHVILLE DIVISION

| | |
|---|---|
| LISA ARNOLD, BRANDI TROUT, and SANDRA GOLDEN-WOODS, on behalf of the Churchill Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MIGUEL PAREDES, PRUDENT FIDUCIARY SERVICES, LLC, LAWSON H. HARDWICK, III, MATTHEW C. CLARKE, AND CECIL O. KEMP, JR. <br><br> Defendants. | Case No. 3:23-cv-00545 <br><br> Chief Judge Waverly D. Crenshaw Jr. <br><br> Magistrate Judge Barbara D. Holmes |

**PLAINTIFFS' UNOPPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

Plaintiffs, individually and on behalf of all others similarly situation ("Plaintiffs") hereby move pursuant to Federal Rule of Civil Procedure 23(e) for final approval of the class action settlement and for the Court to enter the proposed Final Order and Judgment, attached to this Motion as Exhibit A. Defendants do not oppose the motion.

This motion is supported by Plaintiffs' Memorandum in Support of Motion for Preliminary Approval of Class Settlement (Dkt No. 96), this Court's Order preliminarily

1

approving the Settlement (Dkt No. 100), Plaintiffs' Memorandum in Support of Motion for Attorneys' Fees and Costs (Dkt No. 103) and the declaration attached thereto (Dkt. No. 103-1), and Plaintiffs' accompanying memorandum in support of this motion.

WHEREFORE, Plaintiffs respectfully request that the Court grant their Unopposed Motion for Final Approval of Class Settlement.

Dated: August 20, 2025

Respectfully submitted,

By: */s/ Mark G. Boyko*
Mark G. Boyko
**BAILEY & GLASSER LLP**
Bailey & Glasser LLP
34 N. Gore Ave., Suite 102 Webster Groves, Mo 63119 Telephone: (314) 863-5446
Facsimile: (314)-863-5483
mboyko@baileyglasser.com

Gregory Y. Porter
Bailey & Glasser LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
202-463-2101
Fax: 202-463-2103
gporter@baileyglasser.com

Benjamin A. Gastel (BPR #28699)
**Herzfeld, Suetholz, Gastel, Leniski & Wall, PLLC**
223 Rosa L. Parks Ave., Ste 300
Nashville, TN 37203
Telephone: (615) 800-6225
Facsimile: (615) 994-8625
Ben@hsglawgroup.com

Alyson S. Beridon (BPR #40040)
**Herzfeld, Suetholz, Gastel, Leniski & Wall, PLLC**
425 Walnut St., Ste 2315
Cincinnati, OH 45202

2

Ph: 513-381-2224
Email: alyson@hsglawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date the foregoing document was electronically filed with the Clerk using the CM/ECF system, which will send a notice of electronic filing to all registered users of the CM/ECF system.

Dated: August 20, 2025                    By: /s/ *Mark G. Boyko*
                                               Mark G. Boyko

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF
TENNESSEE NASHVILLE DIVISION

| | |
|---|---|
| LISA ARNOLD, BRANDI TROUT, and SANDRA GOLDEN-WOODS, on behalf of the Churchill Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MIGUEL PAREDES, PRUDENT FIDUCIARY SERVICES, LLC, LAWSON H. HARDWICK, III, MATTHEW C. CLARKE, AND CECIL O. KEMP, JR.<br><br>Defendants. | Case No. 3:23-cv-00545<br><br>Chief Judge Waverly D. Crenshaw Jr.<br><br>Magistrate Judge Barbara D. Holmes |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

Plaintiffs brought this action against the Trustee Defendants[1] and the Board Defendants alleging that Defendants violated ERISA in connection with the sale of stock to the Churchill Holdings, Inc. Employee Stock Ownership Plan (the "Plan") on or about December 24, 2020, and further alleging that the Board Defendants violated ERISA in connection with the allocation

---

[1] Capitalized Terms not defined in this Motion are defined in the Settlement Agreement (Dkt. 97-1).

5

of certain preferred dividends owed to the Plan between 2013 and 2019. During that period, the Plan owned 49% of the shares of the Company. The Plan acquired the remaining 51% of the shares in a 2020 Transaction, which Plaintiffs alleged involved the Plan paying more than fair market value for the additional shares.

The settlement reached in this case (the "Settlement") provides monetary relief to the Class through a $850,000 Gross Settlement Amount that will benefit all 807 Class Members. Considering the litigation risks that further prosecution of this action would entail, this Court should grant final approval of the Settlement.

I. BACKGROUND

   a. **Plaintiffs' claims and the course of litigation**

As described more fully in Plaintiffs' Memorandum in Support of Preliminary Approval, Dkt No. 96, Plaintiffs filed their Complaint on May 26, 2023. (Dkt. 1). Defendants each moved to dismiss the Complaint on August 8, 2023. (Dkt. 39, 41). After those motions were fully briefed, the Court denied the Board Defendants' motion and denied in part the Trustee Defendants' motion, on January 31, 2024. Dkt. 62. The Court granted Plaintiffs' Motion for Class Certification on August 2, 2024.

After discovery, the Parties mediated a settlement during an all-day mediation with Stephen Lucke, a mediator with decades of ERISA-focused experience. The parties exchanged mediation statements prior to the mediation and continued to negotiate the terms of the settlement after mediation completed.

Plaintiffs filed for Preliminary Approval on April 17, 2025 (Dkt. 96) and submitted their Motion for Attorneys' Fees, Reimbursement of Expenses, and Case Contribution Awards for the Named Plaintiffs on July 7, 2025 (Dkt. 103).

6

### b. The Settlement terms

As outlined in the Motion for Preliminary Approval, the Board Defendants have agreed to pay $850,000 into a Qualified Settlement Account for the benefit of the Settlement Class.

The funds remaining after deduction from the Class Settlement Amount for (a) all Attorneys' Fees and Costs; (b) all Administrative Expenses; and (c) any Case Contribution Awards shall constitute the "Net Settlement Amount." Settlement Agreement (Dkt. 97-1) at ¶ 1.23. The Net Settlement Amount will be distributed to the Class Members pursuant to the Plan of Allocation, found in Section 8.2 of the Settlement Agreement. *Id.* ¶ 8.2. Each Class Member's payment will be proportional to their shares over the Settlement Period, with added credit for shares owned during the 2020 Transaction. *Id.*

The Plan's documents identified 807 Class Members. Should Plaintiffs' Motion for Attorneys Fees, Reimbursement of Expenses, and Case Contribution Awards be granted, the Net Settlement Amount is projected to be $406,795.64. This would mean an average recovery of $504 per participant.

In exchange for payment of the Class Settlement Amount by Defendants and satisfaction of the conditions required by the Settlement Agreement, Plaintiffs, the Settlement Class, and the Plan will release the Defendants and other Released Parties from any "Released Claims" as provided for in Section 3.1 of the Settlement Agreement. In summary, the released claims include those claims that pertain to the Plan and/or relating to the valuation of the ESOP, handling of ESOP dividends, and the 2020 Transaction referenced in the Complaint. The Released Parties, Released Claims, and the covenant not to sue are set forth in full in the Settlement Agreement. Settlement Agmt. ¶¶ 3.1–3.4.

### c. Preliminary Approval and the administration of the Settlement

The Court granted Preliminary Approval on May 8, 2025. The Settlement Administrator mailed notices to each class member as required and of the 807 notices mailed, only 78 were returned as undeliverable. Rabe Decl. ¶¶ 11, 13–14. Of these, the Settlement Administrator was able to subsequently locate and mail notices to 63, meaning that at least 98% of the Class received notice. *Id*. Thus, the notice plan and requirements presented to the Court have been followed. To date, no objections to the Settlement have been received. *Id*. at 16.

## II. ARGUMENT

The Sixth Circuit recognizes that the law favors the settlement of class action lawsuits. *Int'l Union v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007). Approval of a fair and reasonable settlement agreement promotes the public's interest in encouraging settlement of litigation. *Edwards v. City of Mansfield*, No. 1:15-959, 2016 WL 2853619 (N.D. Ohio May 16, 2016).

Review of a proposed class action settlement for approval generally proceeds in two stages: (1) preliminary approval and notice to class members of the proposed settlement; and (2) final approval following a fairness hearing in which the Court determines whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To evaluate whether the settlement is fair, reasonable, and adequate, Courts look at: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Todd v. Retail Concepts, Inc.*, No. 3:07-788, 2008 WL 3981593, *4 (M.D.Tenn Aug. 22, 2008) (quoting *Int'l Union v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

8

a. **The class is adequately represented, the negotiations were at arm's length, and there is no suggestion of collusion.**

Rule 23(e)(2)(A), requiring adequate representation by the Plaintiffs and their counsel is addressed in Plaintiffs' Motion for Attorneys Fees. In addition, and in satisfaction of Rule 23(e)(2)(B), the Parties' negotiations were at arm's length, extensive and hard fought, with the assistance of a professional, experienced class action mediator. Similarly, the arm's length nature of the negotiations, and the vigorous litigation of the Action, establish a lack of collusion, the first *Int'l Union* factor. There is no suggestion of fraud or collusion in this case, where the proposed class settlement was the product of rigorous, hard-fought negotiations conducted at arm's-length. *Int'l Union v. GM*, 497 F.3d at 631.

b. **The complexity, expense, and likely duration of the litigation.**

Rule 23(e)(2)(C)(i) and the second and fourth *GM* factors require the court to consider the adequacy of the relief obtained, in light of the risk, complexity, cost, and likely duration of the litigation.

Here, the litigation would be even more lengthy and expensive if this Action were to proceed further. Plaintiffs faced significant risks. Plaintiffs and Defendants had vastly different views about Defendants' actions, their potential liability, and the likely outcome of the litigation. Plaintiffs' core allegations regarding the 2020 Transaction rested on facts that were strongly contested by Defendants, including whether the Transaction was in the best interest of the Plan, whether the Plan paid too much for its stock, and whether there were negative facts that were ignored by or not sufficiently investigated by the Trustee Defendants during the due diligence and negotiation process.

Defendants vigorously denied all of the allegations, asserted affirmative defenses, and otherwise defended its actions with respect to the 2020 Transaction. Defendants pointed to

9

evidence that in their view supported the conclusion that they had no liability, including significant documentary evidence of processes undertaken by the Trustees to evaluate the 2020 Transaction and its fairness to the Plan. If the Action were to proceed through trial, Plaintiffs would have to overcome these defenses and arguments.

Plaintiffs and Defendants also strongly disagree on the proper measure of damages. Defendants contend that the Plan and its participants were not harmed at all. The Parties have exchanged position papers supporting their differing views of what a proper measure of damages should be and presented their theories extensively in the mediation. That core dispute had not been resolved at the time the Parties reached their Settlement, and the uncertainty put both Parties at great risk.

These fact intensive inquiries would have led to a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence would carry the day.

In light of the inherent uncertainty, and potential for delay, a settlement of $850,000 is a good result for the Class. "In the context of a class action settlement, compromise is the essence of a settlement, and the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Klein v. O'Neal*, 705 F. Supp. 2d 632, 649 (N.D.Tex 2010) (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 n.69 (5th Cir. 1978)).

Considering the costs, risks and delay of trial and appeal, the immediate and certain recovery of $850,000 outweighs the uncertain possibility of a greater amount in the future, particularly given the amount of time it would take—including dispositive motions, trial, post-trial and post-judgment briefing, and appeals—for any judgment to be reduced to actual payment to Plan participants.

c. The amount of discovery engaged in by the Parties.

The Settlement came after the close of discovery, when Plaintiffs had the opportunity to review not only the key documents concerning the transactions and handling of dividends, nearly 4,000 documents in all, but also to review those documents with Plaintiffs' consulting expert and conduct depositions. Plaintiffs entered into the settlement with adequate information to value the case and assess their chances of success on the merits.

d. The likelihood of success on the merits

ERISA breach of fiduciary duty litigation is notoriously long, complex, and risky. *Smith v. Krispy Kreme Doughnut Corp.*, No. 05-187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) ("ERISA law is highly complex"); *Amara v. Cigna Corp.*, 534 F. Supp. 2d 288, 296 (D. Conn. 2008) ("ERISA and the regulations under it, are often lamentably obscure — to describe them as a tangled web does not do them justice."). ERISA class action litigation carries a "significant risk of nonpayment." *Kruger v. Novant Health, Inc.*, No. 1:14-208, 2016 WL 6769066 at *4 (M.D.N.C. Sept. 29, 2016). Discovery and consultation with experts revealed barriers to Plaintiffs proving their allegations at trial. Fact intensive inquiries would have led to exorbitant costs and delays, thus the immediate and certain recovery of $850,000 outweighs the uncertain possibility of a greater amount in the future. In this context, "compromise is the essence of a settlement, and the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Klein v. O'Neal, Inc.*, 705 F. Supp 2d 632, 649 (citing *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 n. 69 (5th Cir. 1978)).

e. The opinions of Class Counsel and Class Representatives.

Class Counsel and the Class Representatives unanimously believe that the settlement is fair and reasonable and in the best interests of the Participants and Settlement Class. Boyko Decl. ¶ 8. In addition, the settlement has been reviewed by an Independent Fiduciary, retained by

11

Defendants, as required by ERISA and the terms of the Settlement Agreement. A copy of the Independent Fiduciary's Report, agreeing that the Settlement and Class Counsel's requested fees and expenses are reasonable. Boyko Decl. ¶ 9, Ex. A.

### f. The reaction of Absent Class Members.

Nearly all of the 807 Class Members received mailed notice informing them of the right to object. To date, Class Counsel is not aware of any objections or negative reactions to the settlement. Boyko Decl. ¶ 7.

### g. The public interest.

The final factor that courts consider in evaluating a settlement is whether the settlement is consistent with the public interests. "There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem*, 2018 F.R.D.508, 534 (E.D. Mich. 2003).

In the context of this case, ERISA is a response to "the lack of employee information and adequate safeguards concerning [employee benefit plans'] operation," and reflects Congress's desire "that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans." 29 U.S.C. § 1001(a). ERISA furthers "the national public interest in safeguarding anticipated employee benefits" upon which individuals' livelihoods depend. *Cutaiar v. Marshall*, 590 F.2d 523, 529 (3d Cir. 1979).

Accordingly, this final consideration is also satisfied.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant final approval of the Settlement.

Dated: August 20, 2025	Respectfully submitted,

By: /s/ Mark G. Boyko
Mark G. Boyko
**BAILEY & GLASSER LLP**
Bailey & Glasser LLP
34 N. Gore Ave., Suite 102 Webster Groves, Mo 63119
Telephone: (314) 863-5446
Facsimile: (314)-863-5483
mboyko@baileyglasser.com

Gregory Y. Porter
Bailey & Glasser LLP
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
202-463-2101
Fax: 202-463-2103
gporter@baileyglasser.com

Benjamin A. Gastel (BPR #28699)
**Herzfeld, Suetholz, Gastel, Leniski & Wall, PLLC**
223 Rosa L. Parks Ave., Ste 300
Nashville, TN 37203
Telephone: (615) 800-6225
Facsimile: (615) 994-8625
Ben@hsglawgroup.com

Alyson S. Beridon (BPR #40040)
**Herzfeld, Suetholz, Gastel, Leniski & Wall, PLLC**
425 Walnut St., Ste 2315
Cincinnati, OH 45202
Ph: 513-381-2224
Email: alyson@hsglawgroup.com

13

**CERTIFICATE OF SERVICE**

      I hereby certify that on this date the foregoing document was electronically filed with the Clerk using the CM/ECF system, which will send a notice of electronic filing to all registered users of the CM/ECF system.

Dated: August 20, 2025                                     By: /s/ *Mark G. Boyko*
                                                                                           Mark G. Boyko